

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
10/29/2020

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FTS INTERNATIONAL, INC., *et al.*,[1] | ) | Case No. 20-34622 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 15, 108** |

## FINAL ORDER (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES, (C) MODIFYING THE AUTOMATIC STAY AND (D) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") and pursuant to sections 105, 361, 362, 363, 503, 506(c), 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking entry of an interim order and this proposed final order (the "**Final Order**"), among other things:

(i)     authorizing the Debtors to use the Prepetition Collateral (as defined below) (including the Cash Collateral (as defined below)), subject to and pursuant to the terms and conditions set forth in this Final Order;

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  FTS International, Inc. (0081); FTS International Manufacturing, LLC (9132); and FTS International Services, LLC (7729).  The location of Debtor FTS International, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 777 Main Street, Suite 2900, Fort Worth, Texas 76102.

1

(ii)    authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties (as defined below), pursuant to sections 361 and 363(e) of the Bankruptcy Code for any diminution in value of any of their interests in the Prepetition Collateral (including the Cash Collateral) from and after the Petition Date as a condition to the Debtors' use of Prepetition Collateral;

(iii)   authorizing the Debtors to waive: (a) the Debtors' right to surcharge any of the Prepetition Collateral (including the Cash Collateral) or the Adequate Protection Collateral (each as defined below) pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(iv)    waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to any of the Prepetition Collateral (including the Cash Collateral) and the Adequate Protection Collateral for the benefit of any party other than the Prepetition Secured Parties;

(v)     approving certain stipulations and releases by the Debtors with respect to the Prepetition Debt Documents and the liens and security interests arising therefrom, subject to certain limited challenge rights;

(vi)    vacating and modifying the automatic stay under section 362 of the Bankruptcy Code (the "**Automatic Stay**") to the extent set forth herein to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order (as defined below) and this Final Order and to deliver any notices of termination described below and as further set forth herein; and

(vii)   waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order.

The Court having considered the Motion and exhibits attached thereto, the *Declaration of Lance Turner, Chief Financial Officer of FTS International, Inc., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 3] (the "**First Day Declaration**"), and the evidence submitted and arguments made by the Debtors at the interim hearing held on September 24, 2020 (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001(b) and (d) and all applicable Local Rules; and the Interim Hearing having been held and concluded; and the Court having entered an interim order (Docket No. 108) (the "**Interim Order**") on September 24, 2020; and the final hearing on the Motion

2

(the "**Final Hearing**") having been held on October 30, 2020; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001(b) and all applicable Local Rules; and all objections, if any, to the relief requested in the Motion, and all reservations of rights included therein, having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the Motion on a final basis is fair and reasonable and in the best interests of the Debtors and their estates and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTORS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.      *Petition Date*.  On September 22, 2020 (the "**Petition Date**") each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  On September 23, 2020, this Court entered an order [Docket No. 32] approving the joint administration of the Chapter 11 Cases.

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their business and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

---

[2]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of Texas, dated May 24, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Both the Debtors and the Prepetition Secured Parties consent to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgements in connection with the Motion consistent with Article III of the United States Constitution.

D.      *Committee Formation*. As of the date hereof, no official committee of unsecured creditors under Section 1102 of the Bankruptcy Code (the "**Committee**") or any other statutory committee has been appointed in the Chapter 11 Cases.

E.      *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Complex Case Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required.

F.      *Cash Collateral*.  All of the Debtors' cash except for cash that is an Excluded Asset (as defined in the Prepetition Debt Documents), wherever located and held, including cash in deposit accounts and securities accounts (whether subject to control agreements or otherwise), constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

4

G.     *Debtors' Stipulations.*  Subject to the limitations thereon contained in paragraphs 21 and 22 below, the Debtors admit, stipulate and agree that:

(i)     *ABL Credit Facility.* Pursuant to that certain Credit Agreement, dated as of February 22, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**ABL Credit Agreement**" and, together with all related agreements and documents executed by any of the Debtors in connection with the ABL Credit Agreement, the "**ABL Documents**"), among (a) the borrowers party thereto (the "**ABL Borrowers**"), (b) the guarantors under the ABL Documents (the "**ABL Guarantors**" and, together with the ABL Borrowers, the "**ABL Obligors**"), (c) Wells Fargo Bank, National Association ("**Wells Fargo**"), as administrative agent and collateral agent (in such capacities, the "**ABL Agent**"), (d) the lenders party thereto (the "**ABL Lenders**" and, collectively with the ABL Agent, the Issuing Bank (as defined under the ABL Credit Agreement) and the Bank Product Providers (as defined under the ABL Credit Agreement), the "**ABL Secured Parties**") and (e) the other ABL Secured Parties party thereto, the ABL Lenders agreed to provide revolving credit and other financial accommodations to the Prepetition ABL Borrowers pursuant to the Prepetition ABL Documents (the "**ABL Credit Facility**").

(ii)     *ABL Obligations.* As of the Petition Date, the ABL Obligors were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, counterclaim or offset of any kind, in respect of reimbursement obligations in respect of letters of credit with a face amount of $3,990,384.00 issued pursuant to, and in accordance with the terms of, the ABL Documents and (b) reimbursement obligations in respect of bank products and treasury management services with an exposure of $3,605,000.00 (collectively, together with accrued and unpaid interest, any reimbursement obligations (contingent or otherwise in respect of letters of credit), any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the ABL Obligors' obligations under the ABL Documents, the "**ABL Obligations**").  Under the ABL Credit Facility, Wells Fargo Bank, National Association, in its capacity as an Issuing Bank (the "**L/C Issuer**"), issued letters of credit in the face amount of $3,990,384.00 (the "**Wells Fargo Letters of Credit**").  The reimbursement and indemnification obligations and fees, commissions and charges in connection with the Wells Fargo Letters of Credit  and the bank product and treasury management services are "Obligations" under the ABL Credit Agreement and are secured by funds on deposit in a cash collateral account ending 2780 held in the name of FTS International Services, LLC at Wells Fargo (the "**L/C and Bank Product Cash Collateral Account**") and the other assets described in that certain Guaranty and Security Agreement dated as of February 22, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified in accordance with the terms thereof).

(iii)    *ABL Facility Liens and Collateral*.  As more fully set forth in the ABL Documents, prior to the Petition Date, the ABL Obligors granted to the ABL Agent, for the benefit of itself and the ABL Lenders, (a) a first priority security interest in and continuing lien on the ABL Collateral (as defined in the Junior Lien Intercreditor Agreement) (the "**Prepetition ABL Priority Collateral**") and (b) a second priority security interest in and continuing lien on the Notes Collateral (as defined in the Junior Lien Intercreditor Agreement) (the "**Prepetition Notes Priority Collateral**" and, together with the Prepetition ABL Priority Collateral, the "**Prepetition Collateral**" and, such liens on security interests in the Prepetition Collateral described in clauses (a) and (b) above, the "**Prepetition ABL Liens**").

(iv)    *Validity of Prepetition ABL Obligations*.  The Prepetition ABL Obligations constitute legal, valid, binding, and non-avoidable obligations of the ABL Obligors, enforceable in accordance with the terms of the ABL Documents.  No offsets, recoupments, challenges, defenses or counterclaims to the Prepetition ABL Obligations exist.  No portion of the Prepetition ABL Obligations or any payments made to the ABL Secured Parties or applied to or paid on account of the obligations owing under the ABL Documents prior to the Petition Date is subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.  The ABL Documents are valid and enforceable by the ABL Secured Parties and ABL Agent, for the benefit of the ABL Secured Parties against each of the ABL Obligors party thereto.  The Prepetition ABL Obligations constitute allowed claims against the applicable ABL Obligors' estates.  No claim or cause of action held by the Debtors or their estates exists against any of the ABL Secured Parties or their agents (in such capacity), whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the ABL Documents (or the transactions contemplated thereunder), Prepetition ABL Obligations, or Prepetition ABL Liens, including without limitation, any right to assert any disgorgement or recovery.

(v)    *Validity, Perfection and Priority of Prepetition ABL Liens*.  The Prepetition ABL Liens:  (a) secure the Prepetition ABL Obligations; (b) are valid, binding, non-avoidable, properly perfected, and enforceable liens on and security interests in the Prepetition Collateral; (c) were granted to, or for the benefit of, the ABL Secured Parties for fair consideration and reasonably equivalent value; and (d) are senior in priority over any and all other liens on the Prepetition Collateral and subject only to (1) the Carve Out, (2) in the case of the Prepetition ABL Priority Collateral, valid, properly perfected, and unavoidable liens permitted under the ABL Documents, but only to the extent that such liens are permitted by the ABL Documents to be senior to the Prepetition ABL Liens (the "**Permitted ABL Liens**"), and (3) in the case of the Prepetition Notes Priority Collateral, (A) the liens and security interests in favor of the Senior Secured Notes Secured Parties and the Term Loan Secured Parties and (B) valid, properly perfected, and unavoidable liens permitted under the Senior Secured Notes Documents

and the Term Loan Documents, but only to the extent that such liens are permitted by the Senior Secured Notes Documents and the Term Loan Documents and to be senior to the Prepetition Senior Secured Notes Liens and the Prepetition Term Loan Liens (the "**Permitted Notes/Term Loan Liens**" and, together with the Permitted ABL Liens, the "**Permitted Liens**").   No portion of the ABL Liens are subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.

(vi)     *Senior Secured Notes*. Pursuant to that certain Indenture, dated as of April 16, 2014 governing the 6.250% Senior Secured Notes due 2022 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**Senior Secured Notes Indenture**" and, together with all related agreements and documents executed by any of the Debtors in connection with the Senior Secured Notes Indenture, collectively, the "**Senior Secured Notes Documents**") among (a) FTS International, Inc., as issuer (in such capacity, the "**Senior Secured Notes Issuer**"), (b) the guarantors under the Senior Secured Notes Documents (the "**Senior Secured Notes Guarantors**" and, together with the Senior Secured Notes Issuer, the "**Senior Secured Notes Obligors**"), (c) U.S. Bank National Association, as trustee and collateral agent (in such capacities, the "**Senior Secured Notes Indenture Trustee**") and (d) the Holders (as defined in the Senior Secured Notes Indenture, the "**Senior Secured Noteholders**" and, collectively with the Senior Secured Notes Indenture Trustee, the "**Senior Secured Notes Secured Parties**"), the Senior Secured Notes Issuer and issued the 6.250% Senior Secured Notes due 2022 to the Senior Secured Noteholders (collectively, the "**Senior Secured Notes**").

(vii)     *Prepetition Senior Secured Notes Obligations*.   Pursuant to the Senior Secured Notes Indenture, the Senior Secured Notes were originally issued in an aggregate principal amount of $500.0 million.   As of the Petition Date, the aggregate principal amount of Senior Secured Notes outstanding was not less than $369.9 million (collectively, together with accrued and unpaid interest, indemnification obligations and all fees, charges, other amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Senior Secured Notes Issuer's and the Senior Secured Notes Guarantors' obligations pursuant to the Senior Secured Notes and the Senior Secured Notes Documents, the "**Prepetition Senior Secured Notes Obligations**").

(viii)     *Prepetition Senior Secured Notes Liens and Collateral*.   As more fully set forth in the Senior Secured Notes Documents, prior to the Petition Date, the Senior Secured Notes Obligors granted to the Senior Secured Notes Indenture Trustee, for the benefit of itself and the Senior Secured Noteholders, (a) a first priority security interest in and continuing lien on the Prepetition Notes Priority Collateral and (b) a second priority security interest in and continuing lien on the Prepetition ABL Priority Collateral (such liens on and security interests in the Prepetition Collateral described in clauses (a) and (b) above, the "**Prepetition Senior Secured Notes Liens**").

(ix)     *Validity of Prepetition Senior Secured Notes Obligations*.  The Prepetition Senior Secured Notes Obligations constitute legal, valid, binding and non-avoidable obligations of the Senior Secured Notes Obligors, enforceable in accordance with the terms of the Senior Secured Notes Documents.  No offsets, recoupments, challenges, defenses, or counterclaims to the Prepetition Senior Secured Notes Obligations exist.  No portion of the Prepetition Senior Secured Notes Obligations or any payments made to the Senior Secured Notes Secured Parties or applied to or paid on account of the obligations owing under the Senior Secured Notes Documents prior to the Petition Date is subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.  The Senior Secured Notes Documents are valid and enforceable by the Senior Secured Notes Secured Parties and Senior Secured Notes Indenture Trustee, for the benefit of the Senior Secured Notes Secured Parties against each of the Senior Secured Notes Obligors party thereto.  The Prepetition Senior Secured Notes Obligations constitute allowed claims against the applicable Senior Secured Notes Obligors' estates.  No claim of or cause of action held by the Debtors or their estates exists against any of the Senior Secured Notes Secured Parties or their agents (in such capacity), whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Senior Secured Notes Documents (or the transactions contemplated thereunder), Prepetition Senior Secured Notes Obligations, or Prepetition Senior Secured Notes Liens, including without limitation, any right to assert any disgorgement or recovery.

(x)     *Validity, Perfection and Priority of Prepetition Senior Secured Notes Liens*.  The Prepetition Senior Secured Notes Liens:  (a) secure the Prepetition Senior Secured Notes Obligations; (b) are valid, binding, non-avoidable, properly perfected, and enforceable liens on and security interests in the Prepetition Collateral (notwithstanding the discharge or payment in full of the ABL Obligations and/or termination of the ABL Documents); (c) were granted to, or for the benefit of, the Senior Secured Notes Secured Parties for fair consideration and reasonably equivalent value; and (d) are senior in priority over any and all other liens on the Prepetition Collateral and subject only to (1) the Carve Out, (2) the Prepetition Term Loan Liens on the Prepetition Collateral, which rank *pari passu* with the Prepetition Senior Secured Notes Liens, (3) in the case of the Prepetition Notes Priority Collateral, any Permitted Notes/Term Loan Liens, and (4) in the case of the Prepetition ABL Priority Collateral, (A) the liens and security interests in favor of the ABL Secured Parties and (B) any Permitted ABL Liens.  No portion of the Senior Secured Notes Liens are subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.

(xi)    *Prepetition Term Loan Facility.*   Pursuant to that certain Term Loan Agreement, dated as of April 16, 2014 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**Term Loan Agreement**" and, together with all related agreements and documents executed by any of the Debtors in connection with the Term Loan Agreement, collectively, the "**Term Loan Documents**" and, collectively with the ABL Documents and the Senior Secured Notes Documents, the "**Prepetition Debt Documents**"), among (a) FTS International, Inc., as borrower (in such capacity, the "**Term Loan Borrower**"), (b) the guarantors under the Prepetition Term Loan Documents (the "**Term Loan Guarantors**" and, together with the Term Loan Borrower, the "**Term Loan Obligors**" and, collectively with the ABL Obligors and the Senior Secured Notes Obligors, the "**Prepetition Obligors**"), (c) Wilmington Savings Fund Society, FSB as successor administrative agent (the "**Term Loan Agent**" and, together with the ABL Agent and the Senior Secured Notes Indenture Trustee, the "**Prepetition Agents**"), and (d) the lenders party thereto (the "**Term Loan Lenders**" and, together with the Term Loan Agent, the "**Term Loan Secured Parties**" and, collectively with the ABL Secured Parties and Senior Secured Notes Secured Parties, "**Prepetition Secured Parties**") the Term Loan Lenders provided term loans to the Term Loan Borrower.

(xii)    *Term Loan Obligations*.   As of the Petition Date, the Term Loan Obligors were justly and lawfully indebted and liable to the Term Loan Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $67.4 million in respect of loans made to the Term Loan Borrower pursuant to, and in accordance with, the terms of the Term Loan Documents (collectively, together with accrued and unpaid interest, any fees, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Term Loan Obligors' obligations pursuant to the Term Loan Documents, the "**Prepetition Term Loan Obligations**" and, collectively with the Prepetition ABL Obligations and the Prepetition Senior Secured Notes Obligations, "**Prepetition Obligations**").

(xiii)    *Prepetition Term Loan Liens and Collateral*.   As more fully set forth in the Term Loan Documents, prior to the Petition Date, the Term Loan Obligors granted to the Term Loan Agent, for the benefit of itself and the Term Loan Lenders, (a) a first priority security interest in and continuing lien on the Prepetition Notes Priority Collateral and (b) a second priority security interest in and continuing lien on the Prepetition ABL Priority Collateral (such liens on security interests in the Prepetition Collateral described in clauses (a) and (b) above, the "**Prepetition Term Loan Liens**" and, collectively with the Prepetition ABL Liens and the Prepetition Senior Secured Notes Liens, the "**Prepetition Liens**").

(xiv)    *Validity of Prepetition Term Loan Obligations*.   The Prepetition Term Loan Obligations constitute legal, valid, binding and non-avoidable obligations of the Term Loan Obligors, enforceable in accordance with the terms of the Term Loan

9

Documents.   No offsets, recoupments, challenges, defenses, or counterclaims to the Prepetition Senior Term Loan Obligations exist.   No portion of the Term Loan Obligations or any payments made to the Term Loan Secured Parties or applied to or paid on account of the obligations owing under the Term Loan Documents prior to the Petition Date is subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.   The Term Loan Documents are valid and enforceable by the Term Loan Secured Parties and Term Loan Agent, for the benefit of the Term Loan Secured Parties against each of the Term Loan Obligors party thereto.   The Prepetition Term Loan Obligations constitute allowed claims against the applicable Term Loan Obligors' estates.   No claim or cause of action held by the Debtors or their estates exists against any of the Term Loan Secured Parties or their agents (in such capacity), whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Term Loan Documents (or the transactions contemplated thereunder), Prepetition Term Loan Obligations, or Prepetition Term Loan Liens, including without limitation, any right to assert any disgorgement or recovery.

(xv)   *Validity, Perfection and Priority of Prepetition Term Loan Liens*.   The Prepetition Term Loan Liens:  (a) secure the Prepetition Term Loan Obligations; (b) are valid, binding, non-avoidable, properly perfected, and enforceable liens on and security interests in the Prepetition Collateral (notwithstanding the discharge or payment in full of the ABL Obligations and/or termination of the ABL Documents); (c) were granted to, or for the benefit of, the Term Loan Secured Parties for fair consideration and reasonably equivalent value; and (d) are senior in priority over any and all other liens on the Prepetition Collateral and subject only to (1) the Carve Out, (2) the Prepetition Senior Secured Notes Liens on the Prepetition Collateral, which rank *pari passu* with the Prepetition Term Loan Liens, (3) in the case of the Prepetition Notes Priority Collateral, any Permitted Notes/Term Loan Liens, and (4) in the case of the Prepetition ABL Priority Collateral, (A) the liens and security interests in favor of the ABL Secured Parties and (B) any Permitted ABL Liens.   No portion of the Term Loan Liens are subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.

(xvi)   *Intercreditor Agreements.*   Except as otherwise expressly modified herein, (i) that certain Junior Lien Intercreditor Agreement, dated as of April 16, 2014  (as amended, restated, supplemented or otherwise modified from time to time prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto, the "**Junior Lien Intercreditor Agreement**") among the Prepetition Agents and the Prepetition Obligors party thereto and (ii) that certain Pari Passu Intercreditor Agreement,

dated as of April 16, 2014 (as amended, restated, supplemented or otherwise modified from time to time prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto, the "**Pari Passu Intercreditor Agreement**" and, together with the Junior Lien Intercreditor Agreement, the "**Intercreditor Agreements**") among the Term Loan Agent, the Senior Secured Notes Indenture Trustee and the Prepetition Obligors party thereto govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the Prepetition Collateral and are binding and enforceable in accordance with their terms.  Pursuant to section 510 of the Bankruptcy Code, but subject to the terms of this Final Order, the Intercreditor Agreements and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Debt Documents (i) shall remain in full force and effect and (ii) shall continue to govern the relative priorities, rights and remedies of the Prepetition Secured Parties with respect to the Prepetition Collateral.

(xvii)  *No Claims or Causes of Action*.  No claim of or cause of action held by the Debtors or their estates exists against any of the Prepetition Secured Parties or their Prepetition Agents or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code or applicable state law equivalents), or whether arising under or in connection with any of the Prepetition Debt Documents (or the transactions contemplated thereunder), Prepetition Obligations, or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery.  Each of the Debtors and their estates irrevocably waives, for itself and its subsidiaries and affiliates, any right to challenge or contest in any way the perfection, validity, priority or enforceability of the Prepetition Liens or the validity or enforceability of the Prepetition Obligations and the Prepetition Debt Documents.

(xviii) *Current Budget*.  The Current Budget (as defined below) is reasonable under the facts and circumstances.

H.      *Findings Regarding the Use of Cash Collateral*.

(i)      Good and sufficient cause has been shown for the entry of this Final Order.

(ii)      The Debtors have a critical need to continue to use Prepetition Collateral (including the Cash Collateral) in order to permit, among other things, the consummation of the plan contemplated by that certain Amended and Restated Restructuring Support Agreement, dated as of August 22, 2020 (as may be amended, modified, or supplemented from time to time, in accordance with its terms, the "**RSA**") among the Debtors party thereto and the Consenting

11

Creditors (as defined in the RSA), the orderly continuation of the operation of their businesses, to maintain business relationships with contract counterparties, vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, and fund expenses of these Chapter 11 Cases.  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral is necessary and vital to the preservation and maintenance of the going concern value of the Debtors and to a successful reorganization.  Absent the Debtors' ability to use Cash Collateral and the other Prepetition Collateral, the continued operation of the Debtors' businesses would not be possible, and harm to the Debtors and their estates would be inevitable.

(iii)    The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire inventory, all of which constitute Prepetition Collateral under the Prepetition Debt Documents (as applicable). The property described in the preceding sentence as it relates to the Prepetition Collateral constitutes Prepetition Collateral that is subject to the Prepetition Secured Parties' valid and perfected security interests (subject to paragraph 21  of this Final Order).

(iv)    The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds and profits in their business operations that constitutes Cash Collateral of the Prepetition Agents under section 363(a) of the Bankruptcy Code.  Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in the Prepetition Obligors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral.  The property described in the two preceding sentences as it relates to the Prepetition Collateral constitutes Cash Collateral of the Prepetition Secured Parties.

12

(v)      The Prepetition Agents on behalf of the Prepetition Secured Parties have consented, or pursuant to the Intercreditor Agreements (as applicable) are deemed to have consented, to the Debtors' use of the Cash Collateral exclusively on and subject to the terms and conditions set forth herein and for the limited duration of such use provided for herein.

(vi)      Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the Adequate Protection Obligations (as defined below) and the terms on which the Prepetition Obligors may continue to use the Prepetition Collateral (including the Cash Collateral) pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(vii)      To the extent such consent is required, the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral on the terms set forth herein.

(viii)      None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Debt Documents or this Final Order (including by permitting the Debtors to use the Prepetition Collateral (including the Cash Collateral) or in taking any other actions permitted by this Final Order), and none of the Prepetition Secured Parties (a) has liability to any third party or shall be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, is used in the Internal

13

Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal or state statute) or (b) owes any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

(ix)    The Prepetition Secured Parties acted in good faith in negotiating with the Debtors at arm's length the terms of the Adequate Protection Obligations (as defined below), the Adequate Protection Liens (as defined below), and the Debtors' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and permit the continued operation of their businesses (including the incurrence, granting and payment of the Adequate Protection Obligations and the granting of Adequate Protection Liens) in accordance with the terms hereof.  The Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code, in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(x)    The Prepetition Secured Parties are entitled to the adequate protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection provided to the Prepetition Secured Parties in this Final Order for any diminution in the value of the Prepetition Secured Parties' interests in property of the Debtors' estates (including the Prepetition Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, the imposition of the Automatic Stay pursuant to section 362(a) of the Bankruptcy Code, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to

protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.  The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (a) protect the Prepetition Secured Parties from the diminution of their respective interests in the value of property of the Debtors' estates including the Prepetition Collateral and (b) obtain the foregoing consents and agreements.

(xi)    Nothing in this Final Order shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of the Prepetition Collateral (including the Cash Collateral) other than on the terms set forth in this Final Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (including the Cash Collateral) (whether senior or junior) or (c) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(xii)    Subject to the Carve Out, (a) each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (b) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral (including the Cash Collateral).

I.    *Permitted Liens; Continuation of Prepetition Liens*.    Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Lien is valid, senior, enforceable, prior, perfected or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, and the Committee (if any), in each case to the extent such party has standing to

challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Lien and/or security interests.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted.*  The relief requested in the Motion is granted on a final basis in accordance with the terms and conditions of this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.      *Carve Out.*

(a)   Carve Out.  As used in this Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the Required Consenting Creditors (as defined in the RSA; *provided* that, if the RSA is terminated, Required Consenting Creditors for the purposes of this Final Order shall thereafter mean the "Required Consenting Creditors" under the RSA at the time of such termination) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the Required Consenting Creditors of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in

16

this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Required Consenting Creditors to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to the Senior Secured Notes Indenture Trustee, and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of a Termination Event and upon termination of the Debtors' right to use Cash Collateral by the Required Consenting Creditors, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b) <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by the Required Consenting Creditors to the Debtors with a copy to counsel for the Senior Secured Notes Indenture Trustee and counsel to the Committee (if any) (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Senior Secured Notes Indenture Trustee for the benefit of the Prepetition Secured Parties, unless the Prepetition Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Senior Secured Notes Indenture Trustee for the benefit of the Prepetition Secured Parties, unless the Prepetition Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  Notwithstanding anything to the contrary in the Prepetition Debt Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 2, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be

used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 2, prior to making any payments to the Senior Secured Notes Indenture Trustee (for the benefit of the Prepetition Secured Parties) or any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition Debt Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the Senior Secured Notes Indenture Trustee shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Senior Secured Notes Indenture Trustee for application in accordance with the Prepetition Debt Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Senior Secured Notes or Term Loans or increase or reduce the Prepetition Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Current Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or in any Prepetition Debt Documents, and subject to the Debtors' compliance with this Final Order, the Carve Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, and the Prepetition Secured Parties 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Obligations.

(c)   <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)   <u>No Direct Obligation to Pay Allowed Professional Fees</u>.  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases (as defined below) under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)   <u>Payment of Carve Out on or After the Termination Declaration Date</u>.   Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

18

3.      *Use of Cash Collateral*.  The Debtors are hereby authorized, subject to the terms and conditions of this Final Order (including compliance with the Budget (as defined below) during the period from the Petition Date through and including the Termination Date (as defined below), to use the Cash Collateral for (a) working capital, general corporate purposes, and administrative costs and expenses of the Debtors incurred in the Chapter 11 Cases, including first-day related relief, subject to the terms hereof and (b) the payment of fees and expenses as provided herein; *provided* that (x) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (y) except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

4.      *Adequate Protection of Senior Secured Notes Secured Parties*.  The Senior Secured Notes Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in property of the Debtors' estates (including the Prepetition Collateral) pursuant to the Senior Secured Notes Documents, to the extent of the diminution in the value of the Senior Secured Notes Secured Parties' respective interests in property of the Debtors' estates (including the Prepetition Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**Senior Secured Notes Secured Parties Adequate Protection Claims**").  In consideration of the foregoing, the Senior Secured Notes Indenture Trustee, for the benefit of the Senior Secured Notes Secured Parties, was granted by the Interim Order and is hereby granted the following (collectively, the "**Senior Secured Notes Secured Parties Adequate Protection Obligations**"):

(a)      *Senior Secured Notes Secured Parties Adequate Protection Liens*.  The

Senior Secured Notes Indenture Trustee, for itself and for the benefit of the other Senior Secured

Notes Secured Parties, was granted by the Interim Order (effective and perfected upon the date

of the Interim Order and without the necessity of the execution of any mortgages, security

agreements, pledge agreements, financing statements, control agreements or other agreements),

and is hereby granted, in the amount of the Senior Secured Notes Secured Parties Adequate

Protection Claims, a valid and perfected replacement security interest in and lien upon all of the

following (all property identified in clauses (i), (ii), (iii), and (iv) below being collectively

referred to as the "**Senior Secured Notes Secured Parties Adequate Protection Collateral**"),

subject only to the Carve Out (all such liens and security interests, the "**Senior Secured Notes**

**Secured Parties Adequate Protection Liens**"):

          (i)      *First Priority Liens on Unencumbered Property*:  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first-priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors, whether real or personal, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, including, without limitation, any and all unencumbered cash of the Debtors (whether maintained with any of the Prepetition Agents or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock or other equity interests of subsidiaries, wherever located, intercompany loans and notes, servicing rights, swap and hedge proceeds and termination payments, claims and causes of action, tort claims and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than (a) claims and causes of action under sections 502(d), 544, 545, 547, 548, and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or

applicable state-law equivalents ("**Avoidance Actions**") and (b) the Excluded Assets, but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets (the "**Unencumbered Property**"), which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens on Unencumbered Property; *provided* that any net proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**") shall constitute Adequate Protection Collateral.

(ii)  *Liens Junior to Certain Other Liens.*  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Debtor, whether real or personal, and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to either (a) valid, perfected and non-avoidable liens (other than the Prepetition Liens) in existence immediately prior to the Petition Date or (b) valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (any such liens described in the foregoing clauses (a) and (b), the "**Other Senior Liens**"), which security interest and lien shall be junior and subordinate to any Other Senior Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iii)  *Liens Senior to Certain Existing Liens.*  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that the Senior Secured Notes Secured Parties Adequate Protection Liens set forth in this paragraph (iii) shall be (a) junior to Other Senior Liens on such property that are Permitted Liens, (b) in the case of the Prepetition ABL Priority Collateral, junior to the Prepetition ABL Liens with respect to such collateral, (c) and *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iv)  *Status of Adequate Protection Claims.*  Subject to the Carve Out and except as otherwise provided herein, the Senior Secured Notes Secured Parties Adequate Protection Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code,

(B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(b)      *Senior Secured Notes Parties Section 507(b) Claim*.  The Senior Secured Notes Indenture Trustee, for itself and for the benefit of the other Senior Secured Notes Secured Parties, was granted by the Interim Order and is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Senior Secured Notes Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Senior Secured Notes Secured Parties 507(b) Claim**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  The Senior Secured Notes Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims (as defined below).

(c)      *Financial Reporting*.  The Debtors shall comply with all reporting requirements and honor all inspection rights set forth in the Senior Secured Notes Documents and shall provide to the Ad Hoc Group of Secured Noteholders Advisors (as defined in the RSA), such other business or financial information that is reasonably requested by the Ad Hoc Group of Secured Noteholders (as defined in the RSA), the Ad Hoc Group of Term Loan Lenders (as defined in the RSA) or their respective advisors, with a copy to the Senior Secured Notes Indenture Trustee.

(d)      *Milestones*. The Senior Secured Notes Secured Parties are entitled to performance of the Milestones (as defined in the RSA), in each case as may be waived, amended, modified or extended from time to time in accordance with the RSA.

5.      *Adequate Protection of Term Loan Secured Parties*.  The Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in property of the Debtors' estates (including the Prepetition Collateral) pursuant to the Term Loan Documents, to the extent of the diminution in the value of the Term Loan Secured Parties' respective interests in property of the Debtors' estates (including the Prepetition Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**Term Loan Secured Parties Adequate Protection Claims**" and, collectively with the Senior Secured Notes Secured Parties Adequate Protection Claims, the "**Adequate Protection Claims**").  In consideration of the foregoing, the Term Loan Agent, for the benefit of the Term Loan Secured Parties, was granted by the Interim Order and is hereby granted the following (collectively, the "**Term Loan Adequate Protection Obligations**" and, collectively with the Senior Secured Notes Secured Parties Adequate Protection Obligations and the adequate protection fees and expenses set forth in paragraph 6, the "**Adequate Protection Obligations**"):

(a)      *Term Loan Secured Parties Adequate Protection Liens*.  The Term Loan Agent, for itself and for the benefit of the other Term Loan Secured Parties, was granted by the Interim Order (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements, control agreements or other agreements), and is hereby granted, in the amount of the

Term Loan Secured Parties Adequate Protection Claims, a valid and perfected replacement security interest in and lien upon all of the following (all property identified in clauses (i), (ii), (iii), and (iv) below being collectively referred to as the "**Term Loan Secured Parties Adequate Protection Collateral**" and, collectively with the Senior Secured Notes Secured Parties Adequate Protection Collateral, the "**Adequate Protection Collateral**"), subject only to the Carve Out (all such liens and security interests, the "**Term Loan Secured Parties Adequate Protection Liens**" and, collectively with the Senior Secured Notes Secured Parties Adequate Protection Liens, the "**Adequate Protection Liens**"):

(i) *First Priority Liens on Unencumbered Property*:  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first-priority senior security interest in and lien upon all Unencumbered Property, which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens on Unencumbered Property; *provided* that any Avoidance Proceeds shall constitute Adequate Protection Collateral.

(ii) *Liens Junior to Certain Other Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Debtor, whether real or personal, and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to any Other Senior Liens, which security interest and lien shall be junior and subordinate to any Other Senior Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iii) *Liens Senior to Certain Existing Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that the Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iii) shall be (a) junior to Other Senior Liens on such property that are Permitted Liens, (b) in the case of the Prepetition ABL Priority Collateral, junior to the Prepetition ABL Liens with respect to such collateral, (c) and

*pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iv)  *Status of Adequate Protection Claims.*  Subject to the Carve Out and except as otherwise provided herein, the Term Loan Secured Parties Adequate Protection Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors, or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(b)  *Term Loan Secured Parties Section 507(b) Claim.*  The Term Loan Agent, for itself and for the benefit of the other Term Loan Secured Parties, was granted by the Interim Order and is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Term Loan Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Term Loan Secured Parties 507(b) Claim**" and, collectively with the Senior Secured Notes Secured Parties 507(b) Claim, the "**Prepetition Secured Parties 507(b) Claims**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  The Term Loan Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims.

(c)  *Financial Reporting.*  The Debtors shall comply with all reporting requirements and honor all inspection rights set forth in the Term Loan Documents and shall

25

provide to the advisors to the Ad Hoc Group of Term Loan Lender Advisors (as defined in the RSA), such other business or financial information that is reasonably requested by the Ad Hoc Group of Secured Noteholders, the Ad Hoc Group of Term Loan Lenders or their respective advisors.

(d)     *Milestones*. The Term Loan Secured Parties are entitled to performance of the Milestones, in each case as may be waived, amended, modified or extended from time to time in accordance with the RSA.

6.     *Other Adequate Protection of Prepetition Secured Parties*.

(a)     *Prepetition Secured Parties Fees and Expenses*.   The Debtors are authorized and directed to pay in cash all reasonable and documented prepetition or postpetition out-of-pocket professional fees, expenses, and disbursements payable to (i) the Prepetition ABL Agent, including the fees and expenses of Goldberg Kohn Ltd. and Bracewell LLP, (ii) the Senior Secured Notes Indenture Trustee, including the fees and expenses of Foley & Lardner LLP, (iii) the Ad Hoc Group of Secured Noteholders Advisors, including the fees and expenses of Davis Polk & Wardwell LLP, Ducera Partners LLC, Rapp & Krock, PC, and any special counsel retained by the Ad Hoc Group of Secured Noteholders, (iv) the Term Loan Agent, including the fees and expenses of Stroock & Stroock & Lavan LLP and Lugenbuhl, Wheaton, Peck, Rankin & Hubbard and (v) the Ad Hoc Group of Term Loan Lender Advisors, including the fees and expenses of Stroock & Stroock & Lavan LLP, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, and any financial advisor or special counsel retained by the Ad Hoc Group of Term Lenders, which payments shall be subject to the procedures set forth in this paragraph 6(a).  The payment of the fees, expenses and disbursements (to the extent incurred after the Petition Date) set forth in this paragraph 6(a) of this Final Order shall be made within ten (10) days (which time

period may be extended by the applicable professional) after the receipt by the Debtors, the U.S. Trustee, and counsel for the Committee (if any) (the "**Review Period**") of invoices without the necessity of filing formal fee applications or compliance with the U.S. Trustee's fee guidelines. Such invoices provided to the Debtors, the U.S. Trustee, and counsel for the Committee (if any) shall include the number of hours billed by the applicable professional (except for financial advisors compensated on other than an hourly basis) and a summary statement of services provided and the expenses incurred; *provided*, *however*, that any such invoice: (i) may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine and (ii) shall not be required to contain individual time detail (*provided*, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), summary data regarding hours worked by each timekeeper for the applicable professional).  Any objections raised by the Debtors, the U.S. Trustee, or the Committee (if any) with respect to such invoices must be in writing and state with particularity the grounds thereof and must be submitted to the applicable professional so as to be actually received prior to the expiration of the Review Period.  Following the Review Period, any such timely received objection will be subject to resolution by the Court to the extent it remains unresolved.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors and the applicable parties shall attempt to negotiate a resolution in good faith until the time of such resolution by the Court.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay all adequate protection fees and expenses incurred under this paragraph 6(a) of this Final Order on or prior to the Petition Date

without the need for any applicable professional to first deliver a copy of its invoice or other supporting documentation.  Any and all fees, costs and expenses paid prior to the Petition Date by any of the Debtors to or on behalf of the Prepetition Secured Parties, in connection with or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

(b)      Any use of Cash Collateral to make payments to Professional Persons or any party entitled to reimbursement pursuant to the Interim Order or this Final Order shall be deemed, to the extent of such payments, to be a diminution in value of the interest of the Prepetition Secured Parties in property of the Debtors' estates.

7.      *Adequate Protection Obligations Binding*.  The Adequate Protection Obligations shall constitute valid, binding and non-avoidable obligations of the Debtors, enforceable against each Debtor and its estate in accordance with the terms of the this Final Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").

8.      *Budget Maintenance and Compliance*.  The Debtors have prepared and delivered to the advisors to the Ad Hoc Group of Secured Noteholders Advisors and the Ad Hoc Group of Term Loan Lender Advisors a budget, in form and substance acceptable to the Required Consenting Creditors (the "**Current Budget**"), a copy of which is attached to this Final Order as **Schedule 1**.  The Current Budget sets forth, among other things, the Debtors' projected total receipts, customer receipts, operating cash disbursements (including payroll), non-operating disbursements (including capital expenditures and professional fees), and net cash flow, for each

28

calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date.  Not later than 5:00 p.m. (Eastern time) on November 5, 2020 and each four-week anniversary thereafter, the Debtors shall deliver to the Ad Hoc Group of Secured Noteholders Advisors and the Ad Hoc Group of Term Loan Lender Advisors a new budget covering the thirteen (13) calendar week period commencing on the first day of the week following the week in which the new budget is delivered, which shall be in form and substance acceptable to the Required Consenting Creditors, with a copy to the Senior Secured Notes Indenture Trustee (the Current Budget and each subsequent approved budget, a "**Budget**") (including any changes made in any such updated Budget with respect to any periods that were included in a previously delivered Budget; *provided* that a separate explanation in reasonable detail of such changes shall be provided to the Ad Hoc Group of Secured Noteholders Advisors and the Ad Hoc Group of Term Loan Lender Advisors), it being understood that if the Required Consenting Creditors have not objected to an updated Budget within ten (10) days after delivery thereof, the updated Budget shall be deemed to be approved; *provided, further*, that in the event that the Required Consenting Creditors object, the then-current approved Budget shall remain the approved Budget until the Required Consenting Creditors and the Debtors agree to an updated, modified or supplemented Budget.  Not later than 5:00 p.m. (Eastern time) on November 3, 2020 and each weekly anniversary thereafter, the Debtors shall deliver to the Ad Hoc Group of Secured Noteholders Advisors and the Ad Hoc Group of Term Loan Lender Advisors, with a copy to counsel for the Senior Secured Notes Indenture Trustee, a variance report (such report, a "**Budget Variance Report**") in form and detail reasonably satisfactory to the Required Consenting Creditors reconciling the applicable Budget to the actual sources and uses of cash on a line-by-line basis for the rolling four-week period most recently ended on the

last Friday prior to the delivery of each Budget Variance Report (such period, the "**Budget Test Period**"), which Budget Variance Report shall be prepared by the Debtors in good faith and fairly present, in all material respects, the information set forth therein.  The Debtors shall, once every two weeks or as often as reasonably practicable, host a conference call with certain members of their executive management team, the Debtors' advisors, the Consenting Creditors that elect to participate in such calls, and the Consenting Creditors' advisors, to discuss the Budget and the Budget Variance Report, among other things related to the Chapter 11 Cases.  As of November 10, 2020 and as of the date of delivery of the Budget Variance Report each two-week anniversary thereafter, for the most recently ended Budget Test Period, the Debtors shall be deemed in compliance with the Budget to the extent that the variance of actual Operating Cash Flow as compared to the corresponding line item in the Budget does not exceed 17.5% (such variance, the "**Permitted Budget Variance**").  If the Debtors are not in compliance with the Budget after taking into account the Permitted Budget Variance, then a Termination Event (as defined below) shall be deemed to have occurred unless waived or consented to by the Required Consenting Creditors.  The Budget is approved on a final basis.  Prepetition Collateral (including the Cash Collateral) shall only be used by the Debtors in accordance with this Final Order and consistent with the Budget.  The Budget may be modified with the written consent of the Debtors and the Required Consenting Creditors.  None of the Prepetition Secured Parties' consent (if any) to, or acknowledgment of, the Budget shall be construed as consent to use of the proceeds of the Prepetition Collateral (including the Cash Collateral) after a Termination Declaration Date, regardless of whether the aggregate funds shown on the Budget have been expended.

9.      *Termination*.  The Debtors' right to use the Cash Collateral pursuant to this Final Order shall terminate (the date of any such termination, the "**Termination Date**") without

further notice or court proceeding on the earliest to occur of (i) the date that is one hundred and thirty-five days (135) after the Petition Date (unless such deadline is extended by mutual agreement of the Required Consenting Creditors and the Debtors) and (ii) five (5) business days (any such five-business-day period of time, the "**Default Notice Period**") following the delivery of a written notice (any such notice, a "**Default Notice**") and the filing of the Default Notice on the Court's docket, during which Default Notice Period the Court shall hold an emergency hearing, by the Required Consenting Creditors to the Debtors, Debtors' Counsel, the U.S. Trustee, counsel to the Prepetition Agents, counsel to the Ad Hoc Group of Secured Noteholders and counsel to the Ad Hoc Group of Term Lenders, counsel to the Senior Secured Notes Indenture Trustee, and counsel to the Committee (if any) (the "**Default Notice Parties**") of the occurrence of any of the Termination Events (as defined and set forth below) unless such occurrence is cured by the Debtors prior to the expiration of the Default Notice Period with respect to such clause or such occurrence is waived by the Required Consenting Creditors. During the Default Notice Period the Debtors shall be permitted to use Cash Collateral (a) in the ordinary course of business, subject to the terms of this Final Order (including the Budget) and (b) to fund the Carve Out.  Upon a determination by the Court that a Termination Event has occurred, the Debtors' right to use Cash Collateral pursuant to this Final Order shall terminate in accordance with the terms of this Final Order, and the Court may fashion any other remedy it deems appropriate.  Except as set forth in this Final Order, the Debtors shall waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the Prepetition Secured Parties set forth in this Final Order or the Prepetition Debt

Documents.  The events set forth in clauses (a) through (u) below are collectively referred to herein as the "**Termination Events**":

(a)     Failure of the Debtors to make any payment under this Final Order to any of the Prepetition Secured Parties, or committees thereof after such payment becomes due;

(b)     Failure of the Debtors to: (i) observe or perform any of the material terms or material provisions contained herein; (ii) comply with any other covenant or agreement specified in this Final Order (other than those described in clause (i) above) in any material respect; or (iii) comply with paragraph 6 of this Final Order (unless waived in writing by the Required Consenting Creditors);

(c)     The termination of the RSA by any party thereto in accordance with Section 12 thereof;

(d)     An order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying this Final Order without the prior written consent of the Required Consenting Creditors;

(e)     The Debtors' commencing solicitation of any plan of reorganization that is not the Plan (as defined in the RSA) unless the Required Consenting Creditors shall have expressly consented to such treatment in writing;

(f)     An order shall have been entered by the Court terminating or modifying the exclusive right of the Debtors to file a chapter 11 plan pursuant to section 1121 of the Bankruptcy Code, without the prior written consent of the Required Consenting Creditors;

(g)     The entry of an order in the Chapter 11 Cases charging any of the Prepetition Collateral or Adequate Protection Collateral of the Prepetition Secured Parties under sections 506(c) or 552(b) of the Bankruptcy Code against any of the Prepetition Secured Parties under which any person takes action against such collateral or that becomes a final non-appealable order, or the commencement of other actions that are materially adverse to any of the Prepetition Secured Parties or their respective rights and remedies under the Prepetition Debt Documents in the Chapter 11 Cases (or any order requiring any of the Prepetition Secured Parties to be subject to the equitable doctrine of "marshaling");

(h)     The entry of an order granting relief from any stay of proceeding (including, without limitation, the Automatic Stay) so as to allow a third party to proceed with foreclosure (or granting of a deed in lieu of foreclosure) or other remedy against any asset with a value in excess of $500,000;

(i)     The entry of any postpetition judgment against any Debtor in excess of $500,000 without the consent of the Required Consenting Creditors and the enforcement thereof shall not be stayed; or there shall be rendered against a Debtor a non-monetary

judgment with respect to a postpetition event which causes or would reasonably be expected to cause a material adverse change or a material adverse effect on the property, business, condition (financial or otherwise) of the Debtors or the ability of the Debtors to comply with the terms and conditions of, and perform their obligations under, this Final Order;

(j)     The payment of any prepetition claims or amounts other than as permitted by an order entered in the Chapter 11 Cases and consistent with the Budget;

(k)     The Court shall have entered an order dismissing any of the Chapter 11 Cases;

(l)     The Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(m)     The Court shall have entered an order appointing a chapter 11 trustee, responsible officer, or any examiner with enlarged powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the Required Consenting Creditors;

(n)     A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the Prepetition Obligations or asserting any other cause of action against and/or with respect to the Prepetition Obligations, the Prepetition Collateral, or any of the Prepetition Secured Parties, (or if the Debtors support or fail to contest any such motion, pleading, application or adversary proceeding commenced by any third party);

(o)     The Debtors, or any person claiming by or through the Debtors shall obtain court authorization to commence, or shall commence, join in, assist or otherwise participate as an adverse party in any suit or proceeding against any of Prepetition Secured Parties relating to the Prepetition Obligations except as expressly permitted hereunder;

(p)     The existence of any claims or charges, or the entry of any order of the Court authorizing any claims or charges or the filing by a Debtor of a motion seeking any claims or charges, other than as permitted under this Final Order, entitled to superpriority under section 364(c)(1) of the Bankruptcy Code *pari passu* or senior to the Prepetition Obligations, or there shall arise or be granted by the Court (i) any claim having priority over any or all administrative expenses of the kind specified in clause (b) of section 503 or clause (b) of section 507 of the Bankruptcy Code (other than the Carve Out), including the Prepetition Secured Parties 507(b) Claims, or (ii) subject to any Other Senior Liens, any lien on the Prepetition Collateral or Adequate Protection Collateral having a priority senior to or *pari passu* with the liens and security interests granted herein, except as expressly provided in this Final Order;

(q)     The entry of an order other than the Interim Order or this Final Order, if any, in any of the Chapter 11 Cases authorizing the use of cash collateral or granting

33

adequate protection to any party without the consent of the Required Consenting Creditors;

(r)      Failure by any of the Debtors to satisfy any of the Milestones, in each case as may be waived, amended, modified or extended from time to time in accordance with the RSA;

(s)      The Debtors shall file a motion seeking, or the Court shall enter, an order authorizing the sale of all or any portion of the Debtors' assets outside the ordinary course of business, or the Debtors shall sell all or any portion of their assets outside the ordinary course of business, unless such order or sale is consented to by the Requisite Consenting Creditors;

(t)      Any lien purported to be created under this Final Order shall cease to be, or shall be asserted by the Debtors not to be, a valid and perfected lien, with the priority required by this Final Order, or the Debtors purport to revoke, terminate or rescind any lien granted hereunder; and

(u)      Any lien or security interest purported to be created under the Prepetition Debt Documents shall cease to be, or shall be asserted by the Debtors not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Prepetition Debt Documents.

10.    *Remedies upon the Termination Date*.  Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable, and (b) each Prepetition Secured Party may exercise their respective rights and remedies available under the Prepetition Debt Documents, this Final Order, or applicable law (subject only to the Carve Out), including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or Adequate Protection Collateral in order to collect the Prepetition Obligations and the Adequate Protection Obligations in accordance with the priorities set forth herein; *provided* that prior to exercising any of the rights and remedies set forth in clause (b) above, the applicable Prepetition Secured Parties shall give five (5) business days' notice to the Default Notice Parties, which notice may be concurrently sent with the Default Notice, and during such notice period the Court shall hold an emergency hearing with respect to the subject matter set forth in such notice.  The Debtors shall not object to the fact that such hearing is being

held on shortened notice.  In any hearing regarding any Default Notice or exercise of rights or remedies, the only issues that may be raised in opposition thereto shall be (x) whether, in fact, a Termination Event has occurred and is continuing or the Termination Date has occurred and (y) the amount of the Adequate Protection Obligations.  Upon a determination by the Court that a Termination Event has occurred and is continuing or a Termination Date has occurred, the Automatic Stay shall be deemed modified and vacated to the extent necessary to permit the exercise of the rights and remedies set forth in clause (b) above.  Any delay or failure of the Prepetition Secured Parties to exercise rights under the Prepetition Debt Documents, this Final Order, or applicable law shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable document.  Notwithstanding the occurrence of the Termination Date or anything herein, all of the rights, remedies, benefits and protections provided to the Prepetition Secured Parties under this Final Order shall survive the Termination Date.  The Automatic Stay is hereby deemed modified and vacated to the extent necessary to permit the exercise by the Prepetition Secured Parties of any rights, privileges and remedies available to them pursuant to the RSA, including, without limitation, terminating the RSA.  Upon the exercise of any such enforcement rights, the Debtors shall cooperate in the disposition of the Prepetition Collateral and shall not otherwise interfere or actively encourage others to interfere with the Prepetition Secured Parties' enforcement of their rights.

11.    *Non-Permitted Restructuring*.  In the event the Debtors file, support, make a written proposal or counterproposal to any party relating to, or take any other similar action in furtherance of (any of the foregoing, a "**Non-Permitted Action**"), a chapter 11 plan, sale process or other restructuring transaction that (i) does not provide for the indefeasible payment on the

effective date thereof of all claims on account of the Prepetition Obligations in full in cash, (ii) does not constitute the Plan or (iii) is otherwise not acceptable to the Required Consenting Creditors (in each case, a "**Non-Permitted Restructuring**"), the Debtors shall provide notice to counsel to the Ad Hoc Group of Secured Noteholders, counsel to the Ad Hoc Group of Term Loan Lenders, and counsel to the Senior Secured Notes Indenture Trustee not less than five (5) business days before taking such Non-Permitted Action (the "**Non-Permitted Restructuring Notice**").   Upon receipt of a Non-Permitted Restructuring Notice, the Required Consenting Creditors shall have the right to immediately file and deliver a Default Notice seeking to terminate the Debtors' right to use Cash Collateral pursuant to this Final Order (consistent with the procedures set forth in paragraphs 9 and 10 of this Final Order).

12.     *No Marshaling/Application of Proceeds*.  The Prepetition Secured Parties shall be entitled to apply the payments or proceeds of the Prepetition Collateral and Adequate Protection Collateral in accordance with the provisions of the Prepetition Debt Documents, and in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral.

13.     *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve Out, with respect to the Prepetition Collateral and the Adequate Protection Collateral, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral and Adequate Protection Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition Agent that holds a lien on the relevant

asset, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Secured Parties, and nothing contained in this Final Order shall be deemed to be a consent by the Prepetition Secured Parties to any charge, lien, assessment, or claim against the Prepetition Collateral under section 506(c) of the Bankruptcy Code.

14. *Bankruptcy Code Section 552(b)*. Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral.

15. *Reservation of Rights of Prepetition Secured Parties*. Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court affirms and finds that the adequate protection provided to the Prepetition Secured Parties for any diminution in their respective interests in the property of the Debtors' estates, including their respective interests in the value of the Prepetition Collateral, is reasonable and necessary to protect the interests of the Prepetition Secured Parties; *provided* that any Prepetition Secured Party may request further or different adequate protection.

16. *Perfection of Adequate Protection Liens.*

(a)     Without in any way limiting the automatically effective perfection of the Adequate Protection Liens granted in the Interim Order and this Final Order, the Senior Secured Notes Secured Parties and Term Loan Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any

jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them under the Interim Order or this Final Order.  Whether or not the Senior Secured Notes Secured Parties or Term Loan Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order.  Upon the request of any of the Senior Secured Notes Secured Parties or Term Loan Secured Parties, each of the Debtors, without any further consent of any party, is authorized to, and to cause its subsidiaries to, take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the validation, perfection, preservation and enforcement of the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of the Interim Order or this Final Order may, in the reasonable discretion of the Senior Secured Notes Indenture Trustee or Term Loan Agent, as applicable, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Order or this Final Order for filing and/or recording, as applicable.  The Automatic Stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the Senior Secured Notes

Secured Parties and Term Loan Secured Parties to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)     To the extent that any Prepetition Secured Party is the secured party under any account control agreements, listed as loss payee or additional insured under any of the Debtors' insurance policies or is the secured party under any other agreement, the applicable agent is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the Debtors' insurance policies and the secured party under each such agreement (in any such case with the same priority of liens and claims thereunder relative to the priority of the Prepetition Liens and Adequate Protection Liens, as set forth herein), and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement, but subject in all respects to the terms of this Final Order), and shall, subject to the terms of this Final Order, act in that capacity and distribute any proceeds recovered or received in respect of any of the foregoing, first, to the Carve Out, and second, to the payment of the Prepetition Obligations.  In accordance with the terms of this Final Order, the Prepetition Agents shall serve as agent for purposes of perfecting such security interests in and liens on all Prepetition Collateral (including the Cash Collateral) that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

17.     *Preservation of Rights Granted Under this Final Order.*

(a)     Other than the Carve Out and other claims and liens expressly granted by the Interim Order or this Final Order, no claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the Prepetition Secured Parties shall be permitted while any of the Prepetition Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in paragraph 2 of

39

this Final Order, the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtors.

(b)      Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise:  (i)  the Prepetition Secured Parties 507(b) Claims and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and such Prepetition Secured Parties 507(b) Claims and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(c)      If any or all of the provisions of the Interim Order or this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or

enforceability of the Prepetition Liens, Prepetition Obligations, or Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacatur or stay of any use of Cash Collateral, any Adequate Protection Obligations incurred by the Debtors to the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of the Interim Order or this Final Order, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code and the Interim Order and this Final Order with respect to all uses of Cash Collateral and the Adequate Protection Obligations.

(d)     Except as expressly provided in this Final Order, the Adequate Protection Obligations and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, substantively consolidating any of the cases with another case, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Adequate Protection Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations. The terms and provisions of this Final Order shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Obligations, Prepetition Liens, Prepetition Obligations, and all other rights

and remedies of the Prepetition Secured Parties granted by the provisions of this Final Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full in cash, as set forth herein.

18.     *L/C and Bank Product Cash Collateral Account; Wells Cash Collateral*. Notwithstanding anything to the contrary herein, the L/C Issuer shall be authorized and entitled to (i) pursuant to the terms of the ABL Documents (A) without notice or demand, and at any time or from time to time, charge, set off and otherwise apply all or any part of the ABL Obligations against the L/C and Bank Product Cash Collateral Account or any part thereof and (B) exercise all other rights and remedies available to it thereunder and (ii) give written notice of non-extension of the Wells Fargo Letters of Credit to the beneficiaries thereof pursuant to the terms of the Wells Fargo Letters of Credit and, in each case, the Automatic Stay shall be lifted as necessary to permit such action without the need for any notice period.  The cash collateral held in the L/C and Bank Product Cash Collateral Account secures all other ABL Obligations, including Lender Group Expenses (as defined under the ABL Credit Agreement) and all such cash collateral is herein defined as the "**Wells Cash Collateral**."  For all purposes under this Final Order and notwithstanding anything to the contrary contained herein, the Wells Cash Collateral may only be used for purposes of satisfying the ABL Obligations as set forth above, and for no other purpose, until such ABL Obligations have been paid in full in cash in accordance with the ABL Documents.

19.     *Payments Free and Clear*.  Subject to the Carve Out (solely with respect to any payments after delivery of a Carve Out Trigger Notice), any and all payments or proceeds remitted to the Prepetition Agents on behalf of the applicable Prepetition Secured Parties after the Petition Date pursuant to the provisions of the Interim Order, this Final Order, any

subsequent order of the Court, or the Prepetition Debt Documents shall be irrevocable, not subject to avoidance, and received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

20. *Releases, Covenant Not to Sue, Indemnity.* Subject to the limitations with respect to any such rights contained in paragraphs 21 and 22 of this Final Order), the Debtors hereby absolutely and unconditionally release and forever discharge and acquit each of the Prepetition Secured Parties and their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (the "**Representatives**" and collectively with the Prepetition Secured Parties, the "**Released Parties**"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgements and causes of action (collectively, the "**Released Claims**") of any kind, nature or description, whether matured or unmatured, known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or equity, upon contract or tort or under any state or  federal or common law or statute or regulation or otherwise, whether or not arising out of or related to (as applicable) the Prepetition Debt Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made

thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order, and further covenant not to sue and to indemnify (in addition to and not in place of any and all other indemnities in favor of the Released Parties) the Released Parties on account of any and all Released Claims. The releases in this paragraph are in addition to and shall not limit any other releases, covenants not to sue, or waivers by the Debtors in favor of the Released Parties; *provided*, *however*, that the Released Claims shall not include those determined by a final, non-appealable order of a court of competent jurisdiction to have arisen from willful misconduct, actual fraud, or gross negligence.

21.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph G of the Findings of Fact and Conclusions of Law of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph G of the Findings of Fact and Conclusions of Law this Final Order, shall be binding upon all other parties in interest, including, without limitation, any Committee or other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases, and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes unless:  (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or

44

contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) the date on which the Plan is confirmed in these Chapter 11 Cases, (y) 75 calendar days after entry of the Interim Order and (z) solely for any Committee, 60 calendar days after the appointment of any Committee if appointed within 30 days after the Petition Date, (ii) any such later date as has been agreed to, in writing, by the applicable Prepetition Agent(s) (with the consent of the Required Lenders (as defined in the ABL Credit Agreement), the Required Lenders (as defined in the Term Loan Agreement) or the Senior Secured Noteholders holding a majority in aggregate principal amount of the Senior Secured Notes, as applicable) and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served prior to the expiration of the deadline to commence a Challenge (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"), *provided*, *however*, that if, prior to the end of the Challenge Period, (x) the cases convert to chapter 7, or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of sixty (60) days solely with respect to any such trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any of the Prepetition Secured Parties or their Representatives in connection with matters related to the (i) Prepetition Debt Documents, (ii) Prepetition Obligations, (iii) Prepetition Liens or (iv) Prepetition Collateral, and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such

timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Final Order shall be binding on all parties in interest, including, without limitation, the Committee (if any), (b) the obligations of the Prepetition Obligors under the Prepetition Debt Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first-priority security interests and liens, not subject to recharacterization, subordination, avoidance or other defense, and (d) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by any other party in interest, including, without limitation, the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any other party in interest, including, without limitation, the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto

(including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the Prepetition Debt Documents shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph G of the Findings of Fact and Conclusions of Law of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee (if any), standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to (i) the Prepetition Debt Documents, (ii) the Prepetition Obligations, (iii) the Prepetition Liens or (iv) the Prepetition Collateral.

22.    *Limitation on Use of Cash Collateral*.  Notwithstanding any other provision of this Final Order or any other order entered by the Court, none of the Prepetition Collateral (including the Cash Collateral) or Adequate Protection Collateral or any portion of the Carve Out may be used directly or indirectly by any Debtor, any Committee or any other official or unofficial committee appointed in the Chapter 11 Cases, or any trustee appointed in the Chapter 11 Cases or any Successor Cases, including any chapter 7 case, or any other person, party or entity, (a) in connection with the investigation, threatened initiation, initiation or prosecution of

any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition Secured Parties, or each of the foregoing's respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt Documents, the Prepetition Obligations, the Prepetition Liens, the Prepetition Collateral and/or the Adequate Protection Obligations granted to the Prepetition Secured Parties under the Interim Order or the Final Order, if any, as applicable, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the Prepetition Debt Documents, the Prepetition Obligations, the Prepetition Liens, the Prepetition Collateral and/or the liens, claims, rights, or security interests granted under the Interim Order, this Final Order, the Prepetition Debt Documents including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided* that, notwithstanding anything to the contrary herein, the Debtors and the Committee (if any) may use the proceeds of the Prepetition Secured Parties' Adequate Protection Collateral to investigate but not to prosecute (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of no more than $50,000; (b) to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties', enforcement or realization on the Prepetition Obligations, Prepetition Collateral, Adequate Protection Obligations or Adequate Protection Collateral, and the liens, claims and rights granted to such parties under the Interim Order or this Final Order, each in accordance with the Prepetition Debt Documents, the Interim Order, this Final Order or applicable law; (c) to seek to modify any of the rights and remedies granted to any of the

Prepetition Secured Parties under the Interim Order, this Final Order, the Prepetition Debt Documents or applicable law, as applicable; (d) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the Prepetition Collateral, Adequate Protection Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Obligations, Prepetition Obligations or Prepetition Liens; (e) to seek the sale or other disposition of the Prepetition Collateral or the incurrence of any indebtedness outside of the ordinary course of business, in each case without the consent of the Required Consenting Creditors; or (f) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including pursuant to any "first day orders," or pursuant to the Interim Order or pursuant to this Final Order) and (ii) expressly permitted under this Final Order (including the Budget).

23. *Final Order Governs.* In the event of any inconsistency between the provisions of this Final Order, the Interim Order and any other order entered by this Court, the provisions of this Final Order shall govern unless such other order expressly provides that it controls over this Final Order. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order, including, without limitation, the approved Current Budget.

24. *Limitation of Liability.* In permitting the use of the Prepetition Collateral (including the Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this Final Order, none of the Prepetition Secured Parties shall (i) have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the

49

operation or management of any of the Debtors (as such terms, or any similar terms, are used in the Internal Revenue Code, United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Agents or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

25.    *Exculpation*.  Nothing in the Interim Order, this Final Order, the Prepetition Debt Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  In addition, (a) the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the Prepetition Collateral or Adequate Protection Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the Prepetition Collateral and Adequate Protection Collateral shall be borne by the Debtors.

26. *Maintenance of Collateral*.  The applicable Debtors shall comply with the covenants contained in the Prepetition Debt Documents regarding the maintenance and insurance of the Prepetition Collateral.

27. *Binding Effect; Successors and Assigns*.  The terms and provisions of this Final Order, including all findings herein, shall, immediately upon execution by the Court, be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Committee (if any), the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that none of the Prepetition Secured Parties shall have any obligation to permit the use of the Prepetition Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

28. *Master Proof of Claim*.  The Prepetition Agents shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Cases in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Obligations arising under the Prepetition Debt Documents, nor shall any other Prepetition Secured Party be required to file any proofs of claim in the Chapter 11 Cases or any Successor Cases in order to assert claims on behalf of itself for payment of the Prepetition Obligations arising under the Prepetition Debt Documents.  The statements of claim in respect of the Prepetition Obligations set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Interim

Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each Prepetition Agent and/or other Prepetition Secured Party is authorized, but shall not be obligated, to file in the Debtors' lead chapter 11 case, *In re FTS International, Inc.*, Case No. 20-34622 (DRJ), a single, master proof of claim on behalf of the relevant Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Debt Documents and hereunder (each, a "**Master Proof of Claim**") against each of the Debtors. Upon the filing of a Master Proof of Claim against each of the Debtors, the Prepetition Agents and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Debt Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases. The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 28 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases. The Master Proofs of Claim shall not be required to attach any instruments,

52

agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.

29. *Credit Bidding*. The applicable Prepetition Secured Parties shall have the right, consistent with the provisions of the Prepetition Debt Documents, to credit bid up to the full amount of the applicable Prepetition Obligations in any sale of their Prepetition Collateral, on which they have Prepetition Liens or Adequate Protection Liens, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

30. *Proceeds of Subsequent Financing*. If any Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Chapter 11 Cases, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code or in violation of the Prepetition Debt Documents at any time prior to the time at which the Prepetition Obligations have been paid in full in cash, then, unless otherwise agreed by the Required Consenting Creditors in writing in their sole discretion, all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Agents to be applied in a manner consistent with the Prepetition Debt Documents.

31. *Disposition of Prepetition Collateral/Application of Proceeds*. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral other than in the ordinary course of business without the prior written consent of the Required Consenting Creditors (and no such consent shall be implied from any other action, inaction or acquiescence by the Required Consenting Creditors or from any order of this Court).

To the extent that any Prepetition Collateral is sold, transferred, leased, encumbered or otherwise disposed of as contemplated by the terms of the Prepetition Debt Documents, any proceeds of such sale, lease or other disposition of the Prepetition Collateral shall be applied in a manner consistent with the Prepetition Debt Documents.

32.     *Texas Tax Liens*. Notwithstanding any other provisions included in the Motion, the Interim Order or this Final Order, any statutory liens, any statutory liens (the "**Texas Tax Liens**") of the Texas Taxing Entities[3] shall not be primed by any Adequate Protection Liens solely to the extent such Texas Tax Liens are valid, senior, perfected, enforceable, and unavoidable, and under applicable non-bankruptcy law are granted priority over prior perfected security interests or liens.  All parties' rights to object to the priority, validity, amount, and extent of the claims and liens (including the Texas Tax Liens) asserted by the Texas Taxing Entities are fully preserved.

33.     *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

34.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

---

[3]  "**Texas Taxing Entities**" means, collectively, Carrollton-Farmers Branch ISD, Spring Branch Independent School District, City of Houston, Dimmit County, Midland County, Midland Central Appraisal District, and Crockett County Tax Office.

35.     *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

36.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

37.     *The Interim Order*.  Except as specifically amended, supplemented or otherwise modified hereby, all of the provisions of the Interim Order shall remain in effect and are hereby ratified by this Final Order.  In the event of any inconsistency between the terms of this Final Order and the terms of the Interim Order, the terms of this Final Order shall govern.

38.     *Necessary Action*.  The Debtors and the Prepetition Secured Parties are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

39.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

**Signed:  October 28, 2020.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

**Schedule 1**

**Current Budget**

#93744217v6

PRIVILEGED AND CONFIDENTIAL

## Draft Cash Collateral Budget
As of October 8, 2020
($ thousands)



| Filing Timing | | | | | | | | | | Emg. Week | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 Week Period | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 14 |
| Status | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst |
| Week Ending Date | 9-Oct | 16-Oct | 23-Oct | 30-Oct | 6-Nov | 13-Nov | 20-Nov | 27-Nov | 4-Dec | 11-Dec | 18-Dec | 25-Dec | 1-Jan | 8-Jan | Total |
| **Receipts** | **3,215** | **444** | **736** | **1,729** | **1,295** | **2,195** | **4,055** | **548** | **3,147** | **3,116** | **4,595** | **1,486** | **1,493** | **4,817** | **32,870** |
| **Operating Cash Disbursements** | | | | | | | | | | | | | | | |
| Payroll & Benefits | (200) | (2,868) | (200) | (2,541) | (407) | (2,783) | (300) | (2,506) | (407) | (2,723) | (300) | (2,494) | (407) | (2,767) | (20,903) |
| Trade A/P | (1,282) | (2,733) | (1,308) | (1,185) | (1,031) | (906) | (997) | (701) | (1,768) | (1,382) | (1,891) | (1,382) | (1,857) | (1,575) | (19,999) |
| Insurance & Facilities | (679) | (42) | (315) | (440) | (28) | (642) | (484) | (215) | (15) | (615) | (348) | (215) | (15) | (15) | (4,068) |
| Taxes | - | - | (624) | - | - | - | (589) | - | - | (551) | - | - | - | - | (1,763) |
| Capital Expenditures | (79) | (154) | (150) | (382) | (117) | (204) | - | (88) | (124) | (113) | (113) | (113) | (116) | (117) | (1,921) |
| Other | (180) | (196) | (115) | (127) | (115) | (750) | (115) | (115) | (219) | (219) | (819) | (219) | (422) | (222) | (3,833) |
| **Operating Cash Disbursements** | **(2,421)** | **(5,992)** | **(2,712)** | **(4,675)** | **(1,698)** | **(5,285)** | **(2,536)** | **(3,625)** | **(2,533)** | **(5,052)** | **(3,471)** | **(4,974)** | **(2,817)** | **(4,696)** | **(52,487)** |
| **Operating Cash Flow** | **794** | **(5,549)** | **(1,976)** | **(2,946)** | **(403)** | **(3,091)** | **1,519** | **(3,078)** | **614** | **(1,936)** | **1,124** | **(3,488)** | **(1,324)** | **122** | **(19,617)** |
| **Non-Operating Items** | | | | | | | | | | | | | | | |
| Restructuring Professional Fees | - | (675) | (23) | - | - | (1,400) | - | - | - | (17,033) | - | - | - | - | (19,131) |
| Emergence Cash Awards | - | - | - | - | - | - | - | - | - | (1,000) | - | - | - | - | (1,000) |
| Adequate Assurance Deposits | (160) | - | - | - | - | - | - | - | - | - | - | - | - | - | (160) |
| Other Restructuring Related | - | - | - | - | - | - | - | - | - | (31,110) | - | - | - | - | (31,110) |
| Cash Collateralization | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Non-Operating Disbursements** | **(160)** | **(675)** | **(23)** | **-** | **-** | **(1,400)** | **-** | **-** | **-** | **(49,143)** | **-** | **-** | **-** | **-** | **(51,401)** |
| **Total Financing Disbursements** | **-** | **-** | **-** | **(150)** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **(150)** |
| **Net Cash Flow** | **634** | **(6,224)** | **(1,999)** | **(3,096)** | **(403)** | **(4,491)** | **1,519** | **(3,078)** | **614** | **(51,079)** | **1,124** | **(3,488)** | **(1,324)** | **122** | **(71,168)** |
| **Beginning Cash (Book)** | 147,720 | 148,354 | 142,130 | 140,131 | 137,036 | 136,633 | 132,142 | 133,661 | 130,583 | 131,198 | 80,119 | 81,243 | 77,755 | 76,431 | 147,720 |
| Net Cash Flow | 634 | (6,224) | (1,999) | (3,096) | (403) | (4,491) | 1,519 | (3,078) | 614 | (51,079) | 1,124 | (3,488) | (1,324) | 122 | (71,168) |
| Other Cash Adjustments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Unrestricted Cash** | 148,354 | 142,130 | 140,131 | 137,036 | 136,633 | 132,142 | 133,661 | 130,583 | 131,198 | 80,119 | 81,243 | 77,755 | 76,431 | 76,552 | 76,552 |
| **Ending Restricted Cash** | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 |
| **Total Cash** | **156,309** | **150,085** | **148,086** | **144,991** | **144,588** | **140,097** | **141,616** | **138,538** | **139,153** | **88,074** | **89,198** | **85,710** | **84,386** | **84,507** | **84,507** |
| **Rollforward - Restricted Cash** | | | | | | | | | | | | | | | |
| Beginning Balance | 7,795 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,955 | 7,795 |
| Plus: Cash Collateralized LCs / Other | 160 | - | - | - | - | - | - | - | - | - | - | - | - | - | 160 |
| Less: Release of LCs / Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Restricted Cash** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** | **7,955** |
| **Payroll Detail - Excluding Benefits** | | | | | | | | | | | | | | | |
| Salary | - | 780 | - | 780 | - | 780 | - | 780 | - | 780 | - | 780 | - | 780 | 5,457 |
| Hourly - No OT | - | 756 | - | 750 | - | 753 | - | 756 | - | 754 | - | 750 | - | 754 | 5,272 |
| Hourly - OT | - | 723 | - | 691 | - | 673 | - | 651 | - | 649 | - | 645 | - | 656 | 4,688 |
| Stage Bonus | - | 410 | - | - | - | 377 | - | - | - | 340 | - | - | - | 378 | 1,505 |
| **Total Payroll - Excluding Benefits** | **-** | **2,668** | **-** | **2,221** | **-** | **2,583** | **-** | **2,186** | **-** | **2,623** | **-** | **2,174** | **-** | **2,567** | **16,922** |